UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CABLE SYSTEM INSTALLATIONS CORP., et al., | Hon. Joseph H. Rodriguez |
| Plaintiffs, | Civil Action Nos. 12-7407; 12-7435; 12-7447 |
| v. | OPINION |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 351, et al., | |
| Defendants. | |

This matter comes before the Court on Motion to Confirm Arbitration [88] of Defendant International Brotherhood of Electrical Workers, Local 351 ("Local 351") and on Cross-Petition to Vacate Arbitration by Cable Systems Installations Corp. ("CSI"). Petitioner-Consolidated Wind Turbine and Energy Cables Corp. ("WTEC") also joins in the Cross-Petition to Vacate, in part.

The unusual procedural posture of this case results, in part, from the consolidation of three separate cases that all center on the same arbitration award. Although there are several issues present within the consolidated cases, the present motion is limited to a single issue of whether the Arbitration Award at issue must be vacated or confirmed because of potential bias on the part of the Joint Arbitration Committee. The Court has considered the written submissions of the parties and the arguments advanced at the hearing on June 13, 2016. For the reasons expressed on the record that day and those that follow, the Arbitration Award as to CSI will be confirmed.

1

The Court will lift the stay as to the case against WTEC and permit discovery on the damages issues inherent in the determination of whether WTEC is an alter-ego of CSI.

### I. Background[1]

Petitioner CSI is a California electrical contractor. Respondent Local 351 is a labor union that is party to a collective bargaining agreement with the Southern Division of the Southern New Jersey Chapter, Inc., National Electrical Contractors Association ("SNJ NECA"), effective October 1, 2008 until at least September 30, 2011 ("CBA"). (Dick Aff., ¶ 4, Ex. 1.) On January 11, 2011, CSI signed a Letter of Assent with Local 351, represented by signatory Edward H. Gant ("Gant"), Business Manager of Local 351, which authorized SNJ NECA to be CSI's collective bargaining representative for all matters contained in or pertaining to the CBA. (O'Brien Cert., Ex. 1.) The Letter of Assent also states that CSI agreed to be bound by the CBA. (Id.; Dick Aff., ¶ 5.) There is no dispute that CSI is a signatory to the CBA.

On December 20, 2011, counsel for Local 351 sent correspondence to CSI and another company, WTEC, alleging that CSI and WTEC were in violation of the CBA with respect to solar installation work being performed in Vineland, Cumberland County, New Jersey (the "Vineland project"). (Dick Aff., ¶ 7, Ex. 2.) The letter stated, "[s]teps are being undertaken to secure your compliance with the Agreement with the Local Union," suggested that CSI contact Local 351's Business Manager, and requested that CSI or its counsel contact counsel for Local 351. (Dick Aff., Ex. 2.)[2]

---

[1] Portions of the background are taken from the Court's August 1, 2012 Memorandum Opinion and Order. See Cable Systems Installations Corp., v. International Brotherhood of Electrical Workers, Local 351, Civil Action No. 12-1912, [Dkt. No 16].

[2] CSI argues that the letter was not a grievance and did not state that Local 351 had filed a grievance or intended to file a grievance against it. (Dick Aff., ¶ 7.) In addition, CSI claims that no one at

CSI claims that none of its employees performed any work on the Vineland project. (Dick Aff., ¶ 6.) Local 351, however, has asserted that a Robert J. McConathey certified that he was an agent of CSI when he applied for a permit on behalf of CSI on October 21, 2011 to conduct $779,000 worth of electrical work at the Vineland site. (O'Brien Cert., Ex. 5, 6.) In addition, on October 7, 2011, WTEC filed a construction permit application for building ($9,221,000) and electrical ($779,000) work at the Vineland site, with Robert McConathey signing off as WTEC's agent on a subsequent request for plan review. (O'Brien Cert., Ex. 3, 4.) The contractor's address, phone number, license number, and Federal Employer ID number provided were identical for WTEC and CSI. On November 29, 2011, a permit was filed for the same job site, changing the contractor to Robert J. McConathey/AGEE LLC. (O'Brien Cert., Ex. 7.)

Thus, on December 28, 2011, Joseph Knecht, Jr. ("Knecht"), Secretary of the Southern New Jersey Labor Management Committee ("Committee") and one of the Committee's members representing employers, sent correspondence addressed to "CSI/WTEC" stating that the Committee scheduled a hearing "for your company" on January 3, 2012 at 10:00 a.m. "regarding alleged violations of Local Union 351's Collective Bargaining Agreement over work on a solar installation project in Cumberland County N.J." (Dick Aff., ¶ 8, Ex. 3.)

Counsel for CSI responded to Knecht's letter on December 30, 2011 requesting a two-week postponement of the January 3 hearing on the grounds that counsel had recently been retained by CSI, counsel and CSI were not available on January 3 to

---

CSI "with responsibility for this matter," including CSI's Associate General Counsel, saw the letter until after January 3, 2012. (Dick Aff., ¶ 7.)

attend the hearing, CSI had never received a grievance concerning the subject of the hearing, CSI was not notified of the existence of an alleged grievance prior to its receipt of Knecht's December 28 letter, and CSI had no information concerning the nature of the alleged dispute. (Certification of David A. Tango ("Tango Cert."), ¶ 4, Ex. 1.) Knecht sent counsel for CSI an e-mail on December 30 at 10:51 p.m. denying CSI's request for an adjournment, and stating that the Committee's hearing would take place as scheduled, as "CSI/WTEC was given adequate time to make preparations for Tuesday's meeting." (Tango Cert., ¶ 5; Ex. 2.)

On December 31, 2011, counsel for CSI responded to Knecht's December 30 e-mail with a letter requesting that the Committee reconsider its denial of CSI's request for a postponement of the January 3, 2012 hearing. In support of CSI's request for reconsideration, counsel for CSI explained that CSI was not given adequate notice of the hearing, CSI had never received a copy of the grievance or any other documentation concerning the grievance, Article 1.6 of the CBA[3] was not complied with as the meeting required under the first step of the grievance process was never held, CSI only learned that Local 351 had allegedly filed a grievance when it received Knecht's December 28 letter, CSI had no knowledge or information about the allegations raised by Local 351, and Local 351 would not be prejudiced by adjourning the hearing. Counsel for CSI

---

[3]Article I, Section 1.6 of the CBA provides:

> All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor Management Committee.

(Dick Aff., ¶ 4, Ex. 1 at p. 5.)

asserted that, given these circumstances, conducting the hearing on January 3 would demonstrate the Committee's lack of impartiality. (Tango Cert., ¶ 6, Ex. 3.)

On December 31, 2011 Knecht sent counsel for CSI an email in response to CSI's December 31 letter. Knecht's email stated that CSI was provided with more time than the 48 hours typically provided for a hearing[4] and that Knecht believed Local 351 "made several attempts" to contact CSI without success. (Tango Cert., ¶ 7, Ex. 4.) Knecht sent counsel for CSI another e-mail on December 31 stating that he reached out to a representative from Local 351 to request that Local 351 postpone the hearing, but his request was denied. (Tango Cert., ¶ 8, Ex. 5.) Counsel for CSI responded to Knecht's email on December 31 by requesting specific information concerning Local 351's "attempts to contact CSI without success," including any documents supporting Knecht's contention. Counsel for CSI also reiterated the previously highlighted "notice, procedural, and due process deficiencies," and its unavailability and the unavailability of CSI to attend the hearing on January 3, which were the bases for its previously requested adjournment of the hearing. (Tango Cert., ¶ 9, Ex. 6.)

On January 2, 2012, at 6:51 p.m., counsel for CSI again emailed Knecht to inform him and the Committee that CSI and its attorneys were not available to attend the

---

[4]The grievance and arbitration procedure is delineated in Article 1 of the CBA. Article I, Section 1.5 of the CBA states:

> There shall be a Labor-Management Committee of three (3) representing the Union and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

(Dick Aff., ¶ 4, Ex. 1 at p. 4-5.)

5

January 3 hearing.  Counsel for CSI further informed Knecht that CSI was not performing any work in Cumberland County, New Jersey, and that CSI is a completely separate entity from WTEC.  Counsel for CSI requested that he be permitted to call in to the January 3 hearing via telephone to place CSI's notice, procedural, and due process objections on the record and request that all previously sent correspondence be placed in the record.  (Tango Cert., ¶ 10, Ex. 7.)  Later that same night, at 9:05 p.m., Knecht sent an e-mail in response stating that he would speak with Local 351 in the morning and reply to counsel as soon as possible.  (Tango Cert., ¶ 11, Ex. 8.)  In a subsequent e-mail sent a few minutes later, Knecht informed CSI's counsel that "typically attorneys are not present at labor management hearings. Just other contractors and business agents."  (Tango Cert., ¶ 11, Ex. 9.)

     Knecht e-mailed counsel for CSI on January 3, 2012 at 9:56 a.m. to notify him that CSI could participate in the 10 a.m. hearing by telephone and consult its attorneys afterwards, but attorneys who "are not in house attorneys of the contractor are not permitted in labor management hearings."  (Tango Cert., ¶ 12, Ex. 10.)  At 10:08 a.m., counsel for CSI responded to Knecht's email by requesting that the hearing be delayed until 10:30 a.m. so that a representative from CSI could call in to the hearing by telephone to place CSI's notice, procedural, and due process objections on the record.  (Tango Cert., ¶ 13, Ex. 11.)  To that end, CSI's Associate General Counsel, based in Tampa, Florida, called in to the hearing at 10:30 a.m. on January 3, 2012 to place on the record CSI's "notice, procedural, and due process objections."  (Dick Aff., ¶ 9, Ex. 3.)

During Local 351's presentation of its case, Gant, Business Manager of Local 351, served as Chairman of the Committee[5], and presented Local 351's grievance to the Committee, first stating that Local 351 sent a copy of its grievance to CSI, then clarifying that the letter he was referring to was the Committee's December 28, 2011 correspondence scheduling the January 3, 2012 hearing. (Dick Aff., ¶ 10.) After Gant finished presenting Local 351's grievance, CSI's Associate General Counsel placed on the record the notice, procedural, and due process objections previously made, and also informed the Committee that CSI did not have any employees working on the Cumberland County job and that, to his knowledge, the job was being performed by WTEC. (Dick Aff., ¶ 11.) CSI's Associate General Counsel also informed the Committee that CSI and WTEC each has its own employer identification number. (6/11/12 Dick Aff., ¶ 11.) The Committee subsequently informed CSI's Associate General Counsel that it did not need to hear anything further from him, and CSI's Associate General Counsel hung up the phone. (Dick Aff., ¶ 11.)

The Committee decision, dated January 4, 2012, states:

> The Labor Management Committee Convened on January 3, 2012 at 10:00am in the office of Local Union 351 to review L.U. 351's grievance against CSI/WTEC stating that CSI/WTEC has violated L.U. 351's Collective Bargaining Agreement. After careful review of the permitting process, it was concluded that CSI and WTEC are one in the same. It was also concluded that CSI is signatory to L.U. 351 which binds them and

---

[5]Article I, Section 1.7 of the CBA provides:

> All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four (4) members of the Committee, two (2) from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting. In the absence of a deadlock, the Labor Management Committee's decision shall be final and binding.

(Dick Aff., ¶ 4, Ex. 1 at p. 5.)

7

> WTEC to the Collective Bargaining Agreement.  Article IV Section 4.2 of the CBA states that the local shall be the sole source of manpower for projects within its jurisdiction. It was determined that CSI/WTEC performed all electrical work at a permit value of 10 million dollars at 3152 South Delsea Drive, Vineland N.J. 08360 without notifying L.U.  351 or hiring any of their manpower. Therefore, it is the decision of this Labor Management Committee that Local Union 351 shall seek back wages and benefits for all electrical work performed at, or related to, the project at 3152 South Delsea Drive, Vineland N.J. 08360.

(Dick Aff., ¶ 13, Ex. 4.)

CSI then filed an action to vacate the Committee's arbitration award on March 28, 2012, arguing that the  January 4, 2012 arbitration award issued by the Committee should be vacated because CSI was denied a fair hearing, as (1) CSI was never provided with a copy of the grievance that was the subject of the January 3, 2012 hearing; CSI first learned of the alleged grievance when it received the December 28, 2011 correspondence setting the January 3 hearing; (2) CSI was not afforded an opportunity to "adjust" Local 351's dispute prior to the matter being addressed by the Committee, seemingly in violation of Article I, Section 1.6 of the CBA; (3) CSI's request to adjourn the January 3, 2012 proceeding was summarily denied, depriving CSI of the opportunity to investigate the matter and adequately prepare for the hearing, which was CSI's first under the CBA.  Further, CSI's General Counsel has sworn that Robert McConathey was never employed by CSI and was not authorized to file permits on behalf of CSI, "and no electrical work was performed on the [Vineland] jobsite by or on behalf of CSI under any permits allegedly filed by Robert McConathey." (6/11/12 Dick. Aff., ¶ 4, 8.)  Rather, McConathey was working for another company as a subcontractor for WTEC.  (Id. at ¶ 5.)

On May 24, 2012, Local 351 filed a cross-motion to confirm the January 4, 2012 arbitration award issued by the Committee, arguing that Local 351 and the Committee

acted in accordance with the CBA, and CSI is not entitled to more procedure or protection than the CBA provides.  Local 351 also argued that the December 20, 2011 letter sent by its counsel provided CSI with sufficient notice that there was a "question in dispute" as contemplated under Article I, Section 1.6 of the CBA.

Without addressing the alter-ego theory or a single employer theory, the Court, vacated the decision set forth in the Labor-Management Committee's January 4, 2012 letter on the ground that the Joint Committee denied CSI's reasonable request for postponement of the arbitration.   The parties returned to arbitration for a hearing and the Joint Committee issued an award in favor of Local 351 on November 15, 2012. The award stated that CSI violated the CBA by failing to utilize union labor to install the solar panels at the Vineland project. See Cert. of Robert F. O'Brien, Ex. 11, November 15, 2012 Committee Award.  The Joint Committee also found that CSI and WTEC "were functioning as the same entity during the time of construction." Id.

On December 4, 2012 both CSI and WTEC separately filed a Complaint and Petition to Vacate the November 15, 2012 Award.  Local 351 filed an action on December 9, 2012 against CSI and WTEC seeking to recover contributions to the funds it alleged were owed for work done on the Vineland project. The CSI and Local 351 actions were assigned to this Court, while the WTEC action was assigned to the Honorable Robert B. Kugler. The three matters were consolidated by this Court.6   Following discovery motion practice, the Court granted CSI's motion to stay pending determination of the

---

6 The present captioned case was consolidated with <u>Wind Turbine and Energy Cables Corp. v. International Brotherhood of Electrical Workers, Local 351</u>, Docket No. 12 CV-7435 (RBK) and <u>IBEW Local 351 Welfare Pension, Annuity and Joint Apprenticeship Training Funds and their Board of Trustees v. Cable Systems Installations, LLC and Wind Turbine and Energy Cables Corp.</u>, Docket No. 12-CV-7447 (JHR) on February 7, 2013.  See <u>Cable Systems Installations Corp. v. International Brotherhood of Electrical Workers, Local 351</u>, Docket No. 12-7407, #12.

IBEW action. [Dkt. No. 60]. The WTEC Action was stayed on August 20, 2015 and the issue of damages was bifurcated from the liability determination. [Dkt. No. 85]. As a result, presently before the Court is the issue of CSI's liability as set forth in CSI's Petition to Vacate the Arbitration Award and IBEW's Cross-Petition to confirm the same.

CSI moves to vacate the arbitration award on the ground that there is evidence of bias and partiality by the Joint Committee when it rendered the November 15, 2012 award. CSI claims that temporal proximity of the arbitration hearing and issuance of the arbitration award is highly suggestive of bias; the hearing took place on November 13, 2012, two days before the award was issued, and CSI claims the quick turnaround indicates that the arguments presented at the hearing were not fully considered. Also, Gant was the Chairman of the Joint Committee and CSI claims he had a vendetta and obvious bias against CSI and WTEC. In addition, CSI and WTEC argue that if the Court confirms the award, the upshot will be to foreclose WTEC's right to litigate the alter-ego issue because the present matter is captioned as against both CSI and WTEC.

## II.   Standard of Review

The issue before the Court is whether the Arbitration Award issued by the Joint Committee is the product of bias and/or impartiality. Joint committee awards are reviewed under the same standards as binding arbitration awards. <u>International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Ass'n</u>, 574 F.2d 783, 786 n.3 (3d Cir. 1978) (citing <u>General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc.</u>, 372 U.S. 517 (1963); <u>Bieski v. Eastern Automobile Forwarding Co.</u>, 396 F.2d 32 (3d Cir. 1968); <u>Price v. Teamsters</u>, 457 F.2d 605 (3d Cir. 1972)).

The Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. § 1 et seq., provides for limited judicial review of arbitration awards. Pursuant to the FAA, there is a strong presumption in favor of enforcing arbitration awards. Brentwood Medical Assoc. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005). "In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly narrow." Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1055–56 (3d Cir.1991). A court may only vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10; Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008); Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013).

In reviewing an arbitration award, the Court must not substitute its own judgment. The Court must affirm the award "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). This is because "arbitration is a matter of contract," United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960),

11

so if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting Misco, 484 U.S. at 38); see also Ne. Reg'l Council of Carpenters, UBCJA v. B & L Moving & Installation, Inc., No. CIV.A. 14-4129 CCC, 2015 WL 333467, at *1 (D.N.J. Jan. 22, 2015). Under these standards, an award will be confirmed unless it is "irrational." Eichleay Corp., 944 F.2d at 1059 (quoting Roberts & Schaefer Co. v. Local 1846, United Mine Workers, 812 F.2d 883, 885 (3d Cir.1987)).

As a result, courts must not entertain claims that an arbitrator has made factual or legal errors; rather, court review of an arbitration award must consider the "liberal federal policy favoring arbitration" and be conducted with a presumption favoring enforcement of the award. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Southco, Inc. v. Reell Precision Mfg. Corp., 556 F. Supp. 2d 505, 508 (E.D. Pa. 2008), aff'd, 331 F. App'x 925 (3d Cir. 2009).

### III.   Analysis

CSI's argument centers on the conduct and the alleged influence of Gant, who is both the President of Local 351 and the Chairman of the Joint Committee. In addition, CSI claims that the contours of the arbitration hearing did not provide CSI with the "procedures and protections" of the CBA. Finally, CSI argues that the Joint Committee's decision is suggestive of bias because it chose to consider some Local 351's evidence, including hearsay, while it disregarded CSI's evidence. After review of the entire record and upon consideration of the arguments advanced at the hearing, CSI's claims of bias

are insufficient to overcome the strong presumption in favor of enforcement of the award in this case.

The Joint Committee's management of the hearing "draws its essence" from Article I, Section 1.7 of the CBA, as the Committee membership was equally comprised of members of a union and employer management. To the extent CSI argues that Secretary Knochtel was hostile and obstructionist, the record indicates that the email communications relied upon by CSI can be interpreted as having a harsh undertone and could suggest bias. See Dick Decl., Exs. I, J, and K. However, one could also read the communications as having no inflection and providing quick instructions or responses. Even to the extent that the emails and the communications can demonstrate curt, or rude, behavior, the Court cannot conclude on this basis alone that the arbitration was unfair. Eastern Associated Coal Corp., 531 U.S. at 62.

In addition, the CBA does not set forth any procedures or policies for the contours of a hearing. CSI's argument that this fact provides a convenient platform for the Local 351 to abuse the hearing is marginally persuasive. However, the CBA provides for, and the Joint Committee was comprised of, equal members from both union and employer ranks. In addition, if the lack of policies and procedures set forth in the CBA appears to undermine the arbitral process to the sole disadvantage of CSI, CSI could have chosen not to sign the CBA. Misco, Inc., 484 U.S. at 36.

Finally, CSI's claims that it did not have any members on the arbitration panel, that it was not given the opportunity to object to Local 351's members' participation, and that the award was hastily issued and mirrored the January 2012 award is not unusually suggestive of bias. Because the composition of the panel comported with Article I, Section 1.7 of the CBA, the Court will not upset the arbitration award. In

13

addition, the fact that the award was issued quickly after the second hearing on remand, is not unusually suggestive of bias.  The award states that the committee was persuaded by the fact that CSI, and not WTEC, pulled the electrical permits for the project. Dick Decl., Ex. L, Nov. 15, 2012 Award.

On October 7, 2011, WTEC filed for permits for the solar panel work on the Vineland project. The addresses listed for WTEC in the initial permit application information all pointed to CSI: the business address was the CSI's, the business agent Robert McConathey worked for CSI, and the Federal Employer Identification Number was issued to CSI. See O'Brien Cert., Exs. 3-6.  Although WTEC requested a plan review on October 11, 2011, it did not change any of the "CSI" information and McConathey certified that he was an agent authorized to bind WTEC.  When CSI filed its permit application on October 21, 2011, the business address, phone number, and Federal Employer ID Number all matched the WTEC October 7, 2011 permit. Id.  This permit was amended by CSI on November 17, 2011 to change the amount of the cost; the identifying information remained the same.  Id.

Local 351 claims that it met with AGEE, LLC to discuss issues with the Vineland job site prior to the first Joint Committee hearing, which was held on November 29, 2011.  By way of letter dated December 20, 2011, Local 351 informed CSI and WTEC that it believed that the companies were in violation of the CBA for failing to use the proper workforce.  A grievance was filed by way of letter dated December 27, 2011 against WTEC and CSI stating, *inter alia*, that "[t]he employers have violated numerous provisions of the Collective Bargaining Agreement by their conduct and the conduct of their alter-ego company." Id. Ex 9.  The hearing was held on January 3, 2012.

14

On the day of both the November 29, 2011 hearing and the January 3, 2012 hearing, the named contractor for the Vineland solar panel installation project was changed. First, on November 29, 2011 when the named contractor was changed from CSI to McConathey as an agent for AGEE, LLC, and then on January 3, 2012, from McConathey to David Ludlum. Id. at Exs. 7, 8. The evidence suggests that McConathey was the authorized agent for WTEC, CSI, and AGEE. Id.

Counsel for CSI tried to refute this evidence by arguing that CSI and WTEC were separate corporate entities, with separate Federal ID numbers. Dick Decl. ¶¶ 20-23. In addition, counsel argued that WTEC performed all of the work on the Vineland project and that CSI was never awarded the contract for the Vineland project. Id. Finally, there was no evidence presented by Local 351 to demonstrate that CSI ever ordered materials for the project, hired workers, or pulled permits for the project. Id. Only hearsay evidence was offered by Local 351 (specifically by Gant) to challenge CSI's arguments. Id. at ¶ 19.

To refute the argument that the permit information contained references to CSI, by way of Federal ID number and address information, CSI argued that the permit information was erroneously entered by an unauthorized employee of CSI. See Konkel Decl., Ex. M. In addition, CSI claims that the lack of Committee hearing minutes, the Committee's decision to disallow written submissions, and the fact that CSI was not permitted to retain outside counsel, all indicate that the Committee was biased and impartial.

While there is little doubt that procedural irregularities underscored the Committee's decision, the Committee did not stray beyond the terms of the CBA and the Court cannot find that bias prejudiced the arbitration. Moreover, the Committee's

15

decision, in its own words, centered on the initial permit information. It is not for the Court to decide whether that outcome would have changed if CSI was permitted to proceed as it saw fit and was permitted to present documentation. The Court cannot substitute its own judgment for that of the Committee. The evidence that CSI presented in relation to the permit centered on a "rogue employee" theory and was fully presented. The Committee heard testimony that CSI and WTEC had separate Federal ID numbers. The Committee found that unpersuasive and there is nothing in the record to suggest that bias/prejudice influenced this determination. For these reasons, CSI cannot demonstrate that it was prejudiced by the Committee's decisions.

As a result, the Court finds that the arbitration award is not the product of bias or impartiality and, therefore, can be confirmed as to CSI only, as WTEC is not a signatory to the CBA. See New Jersey Reg'l Council of Carpenters v. Heartland Dev. Co., No. CIV No. 09-178, 2010 WL 1706961, at *3 (D.N.J. Apr. 27, 2010) (citing Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc., 814 F.Supp. 392, 403 (D.Del. 1993) (If a party is not a signatory to a collective bargaining agreement, then an arbitrator lacks the authority to issue an award against that party.).

Given that WTEC is not a signatory to the CBA, its right to litigate the alter-ego remains intact and is not impacted by the Joint Committee's determination in the arbitration award. See Eichleay Corp., 944 F.2d at 1059 n. 12 (discussing Laborers' Int'l Union of North Am. v. Foster Wheeler Corp., 868 F.2d 573 (3d Cir. 1989) (An arbitrator's finding of alter-ego cannot bind the non-signatory to a CBA unless a district court has already determined that the two entities are a single employer.). That issue, as to WTEC remains viable and the Court will lift the stay imposed on the consolidated

cases to proceed as to a determination of whether WTEC is an alter ego of CSI so as to be liable for the arbitration award.

An appropriate Order shall issue.


Dated: June 30, 2016

                                               s/ Joseph H. Rodriguez
                                               HON. JOSEPH H. RODRIGUEZ,
                                               United States District Judge